United States District Court
Southern District of Texas
**ENTERED**
February 02, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| THOMAS G. CAMACHO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-157 |
| | § | |
| NUECES COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is (1) Defendants Zachary Taylor Brown and Arnold Carpentier's motion to dismiss (collectively, the "Brown Defendants"), and (2) Defendants Nueces County, Texas and Sheriff J.C. Hooper's motion to dismiss. (D.E. 12; D.E. 13). Both motions are filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Thomas Camacho filed a joint response to both motions (D.E. 21), and Defendants have replied. (D.E. 26; D.E. 27). Having considered the motions and briefing, the record, and the relevant authorities, the Brown Defendants' motion (D.E. 12) is **GRANTED** and Defendants Nueces County, Texas and Sheriff J.C. Hooper's motion (D.E. 13) is **GRANTED in part** and **DENIED in part**.

### I. Background

The relevant facts, as presented in Plaintiff's first amended complaint and accepted as true for the purpose of this motion, are as follows: On or around Thursday, January 2, 2020, Plaintiff was arrested and booked in the Nueces County Jail for outstanding felony warrants. (D.E. 3, p. 3–4). During his booking, he advised the officers of his medical

conditions, which included seizures and cirrhosis of the liver. *Id.* at 4. The officers allegedly told him that because they "didn't have it on file," they would not provide him with his seizure or cirrhosis medications. *Id.* Plaintiff states that he went one week without dialysis at the Nueces County Jail, which was a change from his weekly routine of dialysis treatment every Tuesday, Thursday, and Saturday. *Id.* at 3–4.

Plaintiff further alleges that, after arriving at the Nueces County Jail and going through several different cell arrangements, he was moved to the medical division but was not allowed to shower for two or three weeks. *Id.* at 4. Plaintiff states that he repeatedly asked officers to be able to clean himself by saying "I want to clean myself." Plaintiff alleges that a female officer, Jane Doe #1, deliberately changed this request to "I want to kill myself" so that he would be sent back to a holding cell where bathing was not required. *Id.*

On or about January 26, 2020, Plaintiff was brought before supervisor Zachary Brown, who sent Plaintiff to the holding tank for psychiatric inmates, where he was stripped down, and then moved to another holding cell with two psychiatric inmates. *Id.* at 4–5. Plaintiff claims that while in this holding cell and under the supervision of Arnold Carpentier, Plaintiff was mistakenly placed in a colored smock associated with psychiatric prisoners. *Id.* at 5. Following this, Plaintiff claims that one of the psychiatric prisoners in the holding cell with Plaintiff assaulted him, causing internal bleeding, a skull fracture, spleen damage, head injuries, and orbital fracture. *Id.* Plaintiff was taken and placed in the intensive care unit at Christus Spohn Hospital Corpus Christi, Shoreline. *Id.*

In Plaintiff's first amended complaint, he names as defendants: (1) Nueces County,

Texas; (2) Sheriff J.C. Hooper, in his official capacity; (3) John/Jane Doe #1; (4) Arnold Carpentier, individually; and (5) Zachary Brown, individually. (D.E. 3, p. 1, 2–3). Plaintiff brings claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (D.E. 3). Defendants Zachary Brown and Arnold Carpentier, as well as Defendants Nueces County, Texas and Sheriff J.C. Hooper move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (D.E. 12; D.E. 13). The Court will address the issues raised in both motions to dismiss in this order.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The facial plausibility standard is not a probability standard, but it requires the plaintiff's factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While a court must take all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint that "pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of

entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), a court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). A court may also consider documents attached to "a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to [the] plaintiff's claims." *Id.*

### III. Analysis

#### A. Plaintiff does not state a plausible claim against Defendants Zachery Brown and Arnold Carpentier in their individual capacities.

Plaintiff sues Defendants Zachery Brown and Arnold Carpentier as individuals for violations of 42 U.S.C. § 1983. (D.E. 3, p. 8–9). "Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting § 1983). Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Personal-capacity suits seek to impose liability upon a government official as an individual. *Monell v. Dept. of Soc. Serv.'s of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978). Plaintiff alleges that Officers Brown and Carpentier violated Plaintiff's Eighth and/or

Fourteenth Amendment rights by the following acts and/or omissions:[1]

> (a) by violating his rights as a prisoner when Mr. Camacho was placed in a dangerous situation with a psychiatric inmate(s);
>
> (b) in creating a danger, which otherwise would not have existed, but for the conduct of Defendants, and which made more likely the opportunity of harm to occur to Mr. Camacho;
>
> (c) by failing to intervene, where such intervention would have prevented the violations and/or injuries of Mr. Camacho;
>
> (d) by ignoring Mr. Camacho's serious medical needs;
>
> (e) by having a policy or lack of policy to properly segregate psychotic inmates that are a danger to themselves or others as displayed by Mr. Abram Fernandez[2]; and/or
>
> (f) by having a policy or lack of policy of not utilizing available ADA beds because of lack of manpower.[3]

(D.E. 3, p. 9).

Acts or omissions "a," "b," and "c" concern alleged failures to protect Plaintiff from violence by other prisoners, while act or omission "d" concerns alleged failures to provide Plaintiff with necessary medical care. Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020) (quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)). Pretrial detainees also have a constitutional right to medical care and treatment of serious medical conditions. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020).

---

[1] Plaintiff's amended complaint does not specify which claims it specifically raises against the Brown Defendants. *See* (D.E. 3). Accordingly, any of Plaintiff's allegations against "Defendants" will be construed as including claims against Officers Brown and Carpentier. *See, e.g., id.* at 8–9.

[2] Abram Fernandez was the psychiatric inmate who assaulted Plaintiff.

[3] The Court does not address acts and/or omissions "e" or "f" for purposes of individual liability against the Brown Defendants because Defendant Sheriff J.C. Hooper is the alleged policymaker, not the Brown Defendants. (D.E. 3, p. 12, 31; D.E. 21, p. 4); *see Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990) (noting that "in Texas, the county sheriff is the county's final policymaker in the area of law enforcement").

Brown and Carpentier contend (1) that Plaintiff's amended complaint fails to plead a plausible, constitutional claim under the *Farmer* deliberate-indifference standard, *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) that Plaintiff's allegations cannot overcome the Brown Defendants' qualified immunity. (D.E. 12). The Court addresses each argument in turn.

> *i. Plaintiff's amended complaint does not state a plausible claim of deliberate indifference.*

In "prison-condition" cases involving claims against prison officials for failure to protect a plaintiff from inmate violence or to provide for the plaintiff's medical care, safety, or other "basic human needs," a plaintiff must prove that prison officials acted with "deliberate indifference" to the prisoner's health or safety. *Farmer*, 511 U.S. at 834; *see also Hare v. City of Corinth*, 74 F.3d 633, 647–48 (5th Cir. 1996) (en banc).

Deliberate indifference is an extremely high standard to meet. *Torres*, 972 F.3d at 663. To plead deliberate indifference, a prisoner must show that the defendants were (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, (2) that the defendants actually drew an inference that such potential for harm existed, (3) and that the defendants "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2006) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (brackets omitted).

Plaintiff alleges that Officers Brown and Carpenter acted with deliberate indifference to Plaintiff's serious medical needs and the dangerous situation in which he was placed. (D.E. 3, p. 8–9). Plaintiff avers that "each individual defendant was aware that [Plaintiff] suffered with medical conditions" and that because the defendants were medically trained, Brown and Carpenter should have recognized the "clear and obvious signs" exhibited by Plaintiff and the psychiatric inmate who assaulted him while in a psychotic state. *Id.* at 8.

The allegations against Brown and Carpenter too conclusory and are not pled with sufficient facts to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The only facts Plaintiff pleads regarding Brown's conduct alleges that Plaintiff was brought to supervisor Brown and that after speaking with Plaintiff, Brown determined that Plaintiff wanted to "clean himself" rather than "kill himself," but still sent Plaintiff to the holding tank for suicidal patients. (D.E. 3, p. 5). Regarding Carpenter's conduct, Plaintiff solely alleges that he was mistakenly placed in a colored smock associated with psychiatric prisoners while under Carpenter's supervision. *Id.*

Even accepting these facts as true, Plaintiff has not pled facts sufficient to show that the Brown Defendants were aware of an excessive risk to Plaintiff's health or safety or that the Brown Defendants failed to take reasonable measures to abate any such risk. Although Plaintiff's amended complaint alleges that the Nueces County Jail "typically does not give psychiatric prisoners their medications" while those prisoners are in a holding tank and that this can lead to "hallucinations and bizarre and dangerous behavior" from those psychiatric

prisoners, these general allegations concern Defendant Nueces County and Plaintiff does not allege any facts indicating whether Carpentier and Brown were aware of or engaged in such practices. *See id.* at 5.

Plaintiff also does not plead facts alleging that he faced an excessive risk of not receiving adequate treatment for his liver condition when placed in the holding tank or with other psychiatric inmates. Although Brown and Carpentier's actions, as alleged, may have been potentially negligent or even grossly negligent, without more, Plaintiff fails to plead facts that would allow the Court to infer that the Brown Defendants acted with deliberate indifference. *See Williams*, 956 F.3d at 811 ("Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." (brackets omitted)). As such, Plaintiff fails to state a plausible claim that Defendants Brown and Carpentier violated Plaintiff's Eighth and Fourteenth Amendment rights.[4]

> *ii. Does qualified immunity shield Defendants Brown and Carpentier from this suit in their personal capacity?*

Because the Court finds that Plaintiff fails to state a plausible claim that Defendants Brown and Carpentier violated Plaintiff's Eighth and Fourteenth Amendment rights, the Court does not address whether each defendant is entitled to qualified immunity in this

---

[4] Plaintiff's response poses two alternate theories of liability—supervisor liability and bystander liability—against the Brown Defendants and jailer Joe/Jane Doe. (D.E. 21, p. 8–9). These claims do not appear with any specificity in the amended complaint. *See* (D.E. 3, p. 8–29). Even if they had, Plaintiff's allegations are insufficient to show deliberate indifference, a necessary element for supervisor liability, *see Goodman*, 571 F.3d at 396, or that any officer "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights, (2) [had] a reasonable opportunity to prevent the harm, and (3) [chose] not to act," *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (bystander liability). Should Plaintiff file a motion for leave to amend his complaint, *see infra* section III.E., he is advised that any theory of supervisor liability or bystander liability must be clearly pled.

situation. *See Goodman*, 571 F.3d at 396 ("Qualified immunity is only applicable as a protective shield, [and thus must be addressed by the Court], once a plaintiff has made out a claim against an official acting in his individual capacity.").

### B. Plaintiff's claims against Defendant Sheriff Hooper in his official capacity are duplicative of Plaintiff's claims against Defendant Nueces County, requiring dismissal of Sherriff Hooper from this suit.

Plaintiff sued Defendant Sheriff Hooper in his official capacity for violations of 42 U.S.C. § 1983. (D.E. 3, p. 8–29). In contrast to personal-capacity suits against an individual defendant, official-capacity suits under § 1983 "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).

Therefore, a § 1983 suit against a person in his official capacity is duplicative of a suit against the government entity, itself, when based upon the same facts and circumstances. *See Goodman*, 571 F.3d at 395–96; *Garza v. Escobar*, 386 F. Supp. 3d 794, 804 (S.D. Tex. 2019) (Alvarez, J.) (dismissing § 1983 claims against a defendant in his official capacity because claims were duplicative of claim against governmental entity), *aff'd*, 972 F.3d 721 (5th Cir. 2020). Consequently, in a suit against a public servant officer in their official capacity and the respective government entity based upon the same facts, the appropriate action is to dismiss any claim against the officer in his official capacity. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (stating that "[t]he district court was also correct in dismissing the allegations against all of the municipal officers and

two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves"); *Garza*, 386 F. Supp. 3d at 804.

Because Plaintiff named both Nueces County and Sheriff J.C. Hooper in his official capacity, and because Plaintiff's allegations relating to Sheriff Hooper are of a "policymaker," *see* (D.E. 21, p. 4, 5), and are not based on any individual action specifically directed at Plaintiff from Hooper, Plaintiff's claims against Sheriff Hooper in his official capacity are duplicative against those of the County and are dismissed with prejudice. *See Castro Romero*, 256 F.3d at 354–55; *see also* (D.E. 3, p. 10–12 (grouping Defendant Nueces County with Sheriff Hooper when listing the municipal policies, customs, or procedures that Plaintiff alleges existed and violated his constitutional rights)).

### C. Plaintiff does state a plausible claim in part for § 1983 municipal liability against Defendant Nueces County, Texas.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A municipality will be liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell*, 436 U.S. at 694. To establish municipal liability, a plaintiff must identify three elements: (1) an official policy or custom (2) promulgated by the municipal policymaker[5] (3) was the moving force behind the violation of a constitutional right.

---

[5] Plaintiff's amended complaint identifies Defendant Sheriff Hooper as the policymaker for the

*Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Together, these three elements "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). A "facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* at 579 (quoting *Brown*, 520 U.S. at 407).

### i. Official Policy or Custom

Turning to the first element of a municipal liability claim under § 1983, the Court must determine whether Plaintiff adequately pleads an official policy or custom. *Peterson*, 588 F.3d at 847. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). In contrast, a custom is "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per

---

alleged customs and/or policies at issue in this case. (D.E. 3, p. 12, 31; D.E. 21, p. 4, 5). Although the specific identity of the alleged policymaker need not be pled to survive a motion to dismiss, Plaintiff's complaint adequately identifies Defendant Nueces County's policymaker and this element is satisfied for the alleged municipal liability claim. *See Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016); *Peterson*, 588 F.3d at 847.

curiam)). To survive a motion to dismiss, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

To establish a custom, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citing *Brown*, 520 U.S. at 410–11). Prior incidents "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

Plaintiff's first amended complaint alleges the following custom, practice and/or policies or procedures against Nueces County and Defendant Sheriff Hooper[6]: (1) not properly protecting prisoners by screening them appropriately; (2) not properly taking into consideration prisoner's medical condition; (3) failing to adequately supervise and/or observe their employees and/or officers including reservist; (4) failing to impose proper and sufficient policies and/or procedures as to the classification and designation of prisoners and/or the treatment of the mentally ill and/or their requiring of medical attention; (5) not placing inmates in ADA beds due to lack of manpower; and (6) lack of manpower to properly protect inmates. (D.E. 3, p. 10–11).

Plaintiff's allegations one, two, five, and six appear to be those of customary

---

[6] The claims against Defendant Sheriff Hooper in his official capacity were dismissed from this suit as duplicative claims against those of Nueces County. *See supra* section III.B.; *Castro Romero*, 256 F.3d at 354–55.

policies regarding a failure to protect or provide medical care, while allegations three and four seem to indicate a failure to train and/or supervise and are addressed separately.

a. Failure to Protect Inmates or Provide Medical Care.

Defendant Nueces County does not dispute that Plaintiff was entitled to protection and medical care as an inmate in the County's custody. However, Nueces County argues that Plaintiff's amended complaint fails to cite sufficient examples of similar, prior incidents that demonstrate a custom or pattern of the County failing to provide medical care or to protect its inmates, which can then be attributed to Plaintiff's claims. (D.E. 13, p. 7).

When determining whether a municipal defendant has a custom or practice, the Fifth Circuit requires a pattern of "'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson*, 588 F.3d at 851.

> If actions of [municipal] employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees.

*Webster*, 735 F.2d at 842; *see Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability" (citing *Piotrowski*, 237 F.3d at 578)).[7]

---

[7] The Court notes that the posture of this case is distinguishable from much of the Fifth Circuit case law on establishing a pattern. Discovery has not usually begun at the motion to dismiss stage, unlike in *Peterson*, *Rivera*, and *Webster*, which were at the summary judgment or jury stage. Those cases discussed the need for evidence beyond a bare list of prior incidents. *See Peterson*, 588 F.3d at 850; *Rivera*, 349 F.3d at 247; *Webster*, 735 F.2d at 842. In contrast, here at the motion to dismiss stage, the Court "must only evaluate whether Plaintiff has pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Ramirez*

Persuasive here are rulings from other federal district courts where claims of an unconstitutional policy or custom against a municipality were dismissed. *See Hatcher v. Nueces Cnty.*, 2017 WL 2985639, at *3–4 (S.D. Tex. July 13, 2017) (Head, J.) (finding insufficient facts to infer a policy or custom for failure to provide adequate medical treatment in part because the plaintiff did not plead a pattern of denial of medical care); *Gonzales v. Nueces Cnty.*, 227 F. Supp. 3d 698, 705 (S.D. Tex. 2017) (Ramos, J.) (dismissing claims against a county because lists of internal investigations were devoid of facts showing any similarity); *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 753–54 (S.D. Tex. 2016) (Harmon, J.) (dismissing claims against a city because alleging only three isolated incidents was insufficient to plead a custom or practice); *Moreno v. City of Dall.*, No. 3:13-cv-4106-B, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) (Boyle, J.) (dismissing claims against a city because eight prior incidents over five years did not establish a pattern).

Holdings where the plaintiff was found to have met the pleading standard for municipal liability are also instructive. *See, e.g., Sanchez v. Gomez*, 283 F. Supp. 3d 524, 536–37 (W.D. Tex. 2017) (Martinez, J.) (finding a sufficient pattern of excessive force against persons with mental illness when nine similar incidents were alleged and statistics suggested that the city's proportion of individuals killed by police who had visible mental health issues was double and quadruple the national average); *Flanagan v. City of Dall.*, 48 F. Supp. 3d 941, 952–54 (N.D. Tex. 2014) (Lynn, J.) (finding a "close call" that the

---

*v. Jim Wells Cnty.*, Civ. No. CC-09-209, 2010 WL 2598304, at *2 (S.D. Tex. June 25, 2010) (Head, J.).

14 / 25

plaintiffs had pled sufficient facts in alleging that a police department had a policy to shoot first and ask questions later after the city acknowledged training issues existed and numerous statistics showed high levels of a variety of misconduct compared to the national averages); *Oporto v. City of El Paso*, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010) (Cardone, J.) (finding allegations of thirty-two prior incidents of deadly force spanning fifteen years sufficient to infer a custom or practice).

Although Plaintiff does not cite examples directly on point to Plaintiff's facts—a disabled inmate allegedly deprived of adequate healthcare and protection from violent or psychotic inmates—Plaintiff's amended complaint cites numerous examples of cases in Defendant Nueces County's jail or prison system involving inmates suffering from illnesses—psychiatric or otherwise—who were allegedly denied adequate medical treatment and medication and which resulted in serious injuries, violent attacks, and even the deaths of some inmates. *See* (D.E. 3, p. 13–29).[8] Many of these examples concern mentally ill inmates who allegedly did not receive adequate treatment or care and whose psychological deterioration resulted in suicide or death. *See, e.g.*, Civ. A. No. 2:12cv24 (D.E. 5) (Ramos, J.) (inmate commits suicide after being taken off of suicide watch despite prior suicide attempt); *Cheek v. Nueces Cnty.*, No. 2:13-CV-26, 2013 WL 4017132 (S.D. Tex. Aug. 5, 2013) (Ramos, J.) (death of mentally ill inmate denied prescribed anti-psychotic medication and treatment for physical ailments); *Carillo v. Buendia*, No. 2:20-

---

[8] Defendant Nueces County avers that Plaintiff's cited examples are all distinguishable from Plaintiff's allegations. (D.E. 13, p. 14). However, the Fifth Circuit precedent merely requires that the prior acts be "fairly similar to what ultimately transpired" to constitute a pattern of a municipal defendant's custom or practice. *McCully*, 406 F.3d at 383.

CV-28, 2020 WL 4584380 (S.D. Tex. Aug. 10, 2020) (Ramos, J.) (mentally ill inmate held in Nueces County Jail for over two weeks without medical or psychiatric treatment despite exhibiting psychosis dies during cell extraction).

Here, even though Plaintiff did not die after the mentally ill inmate attacked him, and Plaintiff himself did not suffer from a mental illness, Plaintiff's allegations in combination with the examples cited in the complaint state sufficient facts for a plausible inference that Defendant Nueces County has a pattern and custom of failing to provide adequate medical treatment for inmates with illnesses, psychological or otherwise.

Moreover, at least at this stage, Plaintiff's alleged custom of Nueces County failing to protect inmates appears as a consequence of the County's alleged custom of failing to provide adequate medical treatment. The two customs seem to go together. The example cases cited by Plaintiff demonstrate this relation and are sufficient at this pleadings stage to establish a pattern and custom of failing to protect medically ill inmates, to include disabled inmates. *See* (D.E. 3, p. 13–29).

In sum, taking Plaintiff's cited examples as a whole and accepting Plaintiff's alleged facts as true, the Court finds that Plaintiff's amended complaint supports a reasonable, preliminary inference that Nueces County has persistent, widespread customs of failing to provide adequate medical care to inmates and failing to protect inmates, and that it is reasonable to infer that both municipal customs were the moving forces behind the unconstitutional injuries—Eighth and Fourteenth Amendment violations—inflicted upon Plaintiff. *Cf. Balle v. Nueces Cty.*, 952 F.3d 552, 560 (5th Cir. 2017).

b. Failure to Train

The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Plaintiff's allegations three and four assert that Nueces County is liable for failure to train. *See* (D.E. 3, p. 10–11, 29). Defendant Nueces County moves to dismiss, arguing that Plaintiff pled insufficient factual content to show a failure to train. (D.E. 13, p. 17–18). Plaintiff's response did not address the argument. *See* (D.E. 21). However, the Court has reviewed the merits of this claim.

The standard applicable to a failure-to-train claim is the same as the standard for municipal liability. *Valle*, 613 F.3d at 544. But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish liability for failure to train, a plaintiff must show that: "(1) the municipality's training policy or procedure was inadequate, (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544. "Moreover, for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman*, 571 F.3d at 395 (internal quotation marks omitted) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). To show a municipality's deliberate indifference, the plaintiff is required to "show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights." *McCully*, 406 F.3d at 383 (internal quotation marks omitted).

Plaintiff alleges that "Defendant County . . . is liable for the inadequate training of its deputies/offices under § 1983 . . . because its failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact." (D.E. 3, ¶ 27). The amended complaint contains no other information related to this alleged practice, nor does Plaintiff plead sufficient prior incidents regarding a failure to train for the Court to infer a plausible pattern or custom by Nueces County of failing to train its jail officials. *See* (D.E. 3). Accordingly, the Court finds that any claim of failure to train is insufficiently pled and must be dismissed.

### c. Failure to Supervise

In a § 1983 claim for failure to supervise, a plaintiff must show that (1) the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference. *See Goodman*, 571 F.3d 388 at 395. Additionally, the plaintiff must "plead facts sufficient to show the municipality was deliberately indifferent to the obvious need for . . . supervision." *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015) (internal quotation marks omitted). Plaintiff's amended complaint merely alleges that Defendant Nueces County failed to "adequately supervise and/or observe their employees and/or officers including reservist." (D.E. 3, p. 11). Similar to Plaintiff's allegations regarding the failure to train, Plaintiff's Complaint contains no other information related to this alleged practice, nor does Plaintiff plead sufficient prior incidents regarding a failure to supervise that would allow the Court to reasonably infer a pattern or custom by Nueces County of failing to supervise its jail officials. Accordingly,

any claim of failure to supervise is insufficiently pled and must be dismissed.

### D. Plaintiff does state a plausible claim under the Americans with Disabilities Act and Rehabilitation Act against Defendant Nueces County for failure to accommodate.

In his first amended complaint, Plaintiff alleges that Defendants failed to reasonably accommodate Plaintiff's disability—liver and renal impairment—when Defendants declined to place Plaintiff in one of the Nueces County Jail Annex beds designated for inmates with disabilities. (D.E. 3, p. 31–32). Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, like § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a), provides that individuals with disabilities shall not "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Frame v. City of Arlington*, 657 F.3d 215, 220–21 (5th Cir. 2011) (en banc).[9] In addition to their respective prohibitions of disability-based discrimination, both the ADA and RA "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Cadena v. El Paso Cty.*, 946 F.3d 717, 723–24 (5th Cir. 2020).

Defendants move to dismiss Plaintiff's ADA and RA claims on the grounds that Plaintiff was not entitled to ADA designated beds because they were "additional services" unavailable to non-disabled inmates, and the ADA and RA only entitle an inmate to those services offered to the general jail population. (D.E. 13, p. 19). However, Defendants'

---

[9] The RA and the ADA are judged under the same legal standards, the same legal remedies are available under both Acts, and jurisprudence interpreting either Act is applicable for both. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam); *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).

argument conflates a "failure-to-accommodate claim" with a "disability-discrimination" claim. *See Smith v. Harris Cty.*, 956 F.3d 311, 317–18 (5th Cir. 2020).[10] In the first amended complaint, Plaintiff alleges that Defendant Nueces County "failed to house disabled inmates, such as [Plaintiff], in a safe environment with an ADA bed available for those with disabilities" and that "the County deliberately refused to reasonably accommodate [Plaintiff's] disability while in custody." (D.E. 3, p. 32). As such, the Court construes Plaintiff's ADA allegation as a "failure-to-accommodate claim" rather than a "disability-discrimination" claim, and Defendant's argument regarding additional services is irrelevant.

To succeed on a failure-to-accommodate claim, a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). However, even if a plaintiff successfully proves a failure-to-accommodate claim, Plaintiffs "may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle*, 302 F.3d at 574.

Regarding the first element, a qualifying disability or impairment must be one that substantially limits the ability of an individual "to perform a major life activity as compared

---

[10] To establish a prima facie case of disability discrimination under the public services provision of the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Smith*, 956 F.3d at 317.

to most people in the general population." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590–91 (5th Cir. 2016); *see also* 29 C.F.R. § 1630.2(j)(1)(ii). Defendants do not dispute Plaintiff's allegation that he suffers from cirrhosis of the liver—a permanent physical impairment. (D.E. 3, p. 30). Plaintiff alleges that his liver and renal impairment substantially limits Plaintiff's abilities to care for himself because he must receive dialysis three times a week and his condition interferes with his ability to perform manual tasks, eat, sleep, walk, stand, lift, bend, and communicate. *Id.* As such, the Court finds Plaintiff's allegations plausibly allege that he suffers from a qualifying disability under the ADA and RA.

For the second element, "a plaintiff must show that an entity [defendant] knew of [plaintiff's] disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Cadena*, 946 F.3d at 724. Plaintiff's amended complaint alleges that dialysis staff informed Nueces County Jail employees that Plaintiff needed to be cleaned because of his condition and alleges that Plaintiff was denied a bath for over two weeks, and Plaintiff himself repeatedly requested to be cleaned. (D.E. 3, p. 31). Assuming Plaintiff's allegations are true, these alleged facts plausibly indicate that Defendants knew of Plaintiff's disability. *See id.*

Plaintiff's complaint also alleges sufficient facts for this Court to infer that Defendants failed to make reasonable accommodations for Plaintiff's known disability, the final element in a failure-to-accommodate claim. Plaintiff alleges that Defendants decided not to place Plaintiff—a permanently disabled inmate—in the ADA designated beds or in

a safe protective holding area away from psychotic inmates due to a lack of manpower. (D.E. 3, p. 31). Plaintiff alleges that his disability and medical condition rendered him defenseless and that a nurse even informed Nueces County Jail staff that Plaintiff needed a bed. *Id.* at 4. Accepting these pleadings as true, Plaintiff has pled sufficient facts to raise a plausible inference that Defendants failed to make reasonable accommodations for Plaintiff's disability that resulted in injury to Plaintiff.

Lastly, one technical step in Plaintiff's failure-to-accommodate claim is that he requests "the maximum amount of compensatory damages allowed by law" for the ADA and RA violations. (D.E. 3, p. 30, 32). Compensatory damages, however, for violations of the ADA and RA are only allowed upon a showing of intentional discrimination. *Delano-Pyle,* 302 F.3d at 574. Defendants attack here, arguing that Plaintiff's ADA and RA claims should be dismissed because Plaintiff fails to plead sufficient facts to show that Defendants intentionally discriminated against Plaintiff based on his disability or that Plaintiff. (D.E. 13, p, 20–22).

The Fifth Circuit has hesitated to "delineate the precise contours" of the standard for showing intentionality but has relied "on the widely accepted principle that intent requires that the defendant at least have actual notice of a violation." *Miraglia v. Bd. of Supervisors of La. State Museum,* 901 F.3d 565, 575 (5th Cir. 2018). The circuit also seems to indicate that "something more than deliberate indifference [may be required] to show intent." *Id.* (internal quotation marks omitted) (citing cases).

In any event, the circuit has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering

his chosen method of communication ineffective, and the deputy made no attempt to adapt. *Delano-Pyle*, 302 F.3d at 575–76. Similarly, the circuit found that a plaintiff created a genuine dispute as to intentional discrimination when the evidence indicated that "on several occasions, an interpreter was requested but not provided," and one of the forms of communication that a hospital used to speak with a hearing-impaired patient was often ineffective. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015) (per curiam).

Here, Plaintiff's amended complaint alleges that Defendant Nueces County intentionally discriminated against him in violation of the ADA and RA. (D.E. 3, p. 30, 32). Plaintiff's allegations rest on his repeated requests to clean himself because of his medical condition, as well as indications that he needed to be placed in special unit for disabled inmates, and that Nueces County knew of his medical needs and the applicable ADA and RA standards. *See id.* at 29–32. Plaintiffs allegations are sufficient at this pleadings stage to state a plausible claim for compensatory damages based on failure-to-accommodate under the ADA or RA. *See id.*

### E. Plaintiff's request for leave to file a second amended complaint to correct any deficiencies is granted.

Plaintiff included in his response a request for leave to amend should the Court find his pleading deficient in any way. (D.E. 21, p. 11–12). The Court notes that this order is not dispositive of the entire case because claims against Nueces County remain. The Court will permit Plaintiff to file a motion for leave to amend with the proposed amended pleading attached as an exhibit. The motion shall include any necessary briefing—within

the Court's 25-page limit for motions[11] (D.E. 23, p. 3)—to show that the amended pleading complies with Federal Rule of Civil Procedure 8 and *Twombly*, 550 U.S. 544, & *Iqbal*, 556 U.S. 662. The motion for leave to amend may be filed on or before **February 26, 2021**. No extensions shall be granted.

### F. Defendants Brown and Carpentier's unopposed motion to vacate the current scheduling order (D.E. 31).

After consideration, the Court **GRANTS** Defendants Brown and Carpentier's unopposed motion to vacate the current scheduling order. (D.E. 31).

## IV. Conclusion

For the reasons set forth above, it is **ORDERED**:

1. Defendants Zachery Brown and Arnold Carpentier's Motion to Dismiss (D.E. 12) is **GRANTED in full** and Plaintiff's claim(s) against Defendants Brown and Carpentier individually are **DISMISSED** for failure to state a claim.

2. Defendants Nueces County, Texas and Sheriff J.C. Hooper's Motion to Dismiss ("the Motion to Dismiss") (D.E. 13) is **GRANTED in part** and **DENIED in part** as follows:

   a. The Motion to Dismiss (D.E. 13) is **GRANTED** as to Plaintiff's claim(s) against Defendant Sheriff J.C. Hooper in his official capacity. As such, Plaintiff's claim(s) against Defendant Sheriff J.C. Hooper in his official capacity are **DISMISSED with prejudice** as duplicative to the governmental unity claims.

   b. The Motion to Dismiss (D.E. 13) is **DENIED** as to Plaintiff's 42 U.S.C. § 1983 claims against Defendant Nueces County for failure to protect or failure to provide medical care. As such, Plaintiff's § 1983 claims for failure to protect or provide medical care survive. However, the Motion to Dismiss (D.E. 13) is **GRANTED** as to Plaintiff's § 1983 claims for failure to train or supervise. As such, Plaintiff's § 1983 failure to train or supervise claims are **DISMISSED**.

---

[11] The 25-page motion limit does not apply to a proposed, amended pleading.

    c. The Motion to Dismiss (D.E. 13) is **DENIED** as to Plaintiff's ADA and RA failure-to-accommodate claim against Defendant Nueces County. As such, Plaintiff's ADA and RA failure-to-accommodate claim survives.

3. Defendants Brown and Carpentier's unopposed motion to vacate the current scheduling orders is **GRANTED** (D.E. 31). The Court finds good cause to delay entering a new scheduling order until after the motion for leave to amend, if any, is decided.

4. Plaintiff may file a motion for leave to amend with the proposed amended pleading attached as an exhibit on or before **March 2, 2021**. Should Plaintiff wish to amend his complaint, Plaintiff is **ORDERED** to address the allegations of liability as to each separate Defendant and to identify and correctly plead or dismiss defendant John/Jane Doe #1.

SO ORDERED.

_____
DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Dated: Corpus Christi, Texas
      February 1, 2021